

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EURO-PRO Operating LLC, <br> d/b/a EURO-PRO Corporation, <br> <br> Plaintiff, <br> <br> v. <br> <br> EUROFLEX AMERICAS <br> EUROFLEX SRL, ITALY <br> ANDREA MILANESE <br> PIER ANTONIO MILANESE, <br> <br> Defendants. | CASE NO. _____ (Civil) <br> <br> COMPLAINT <br> <br> JURY TRIAL DEMAND <br> <br> ECF CASE |

08 CIV 6231

## COMPLAINT FOR FALSE ADVERTISING AND UNFAIR COMPETITION

Plaintiff, EURO-PRO Operating LLC ("EURO-PRO"), by and through its undersigned attorneys, for its Complaint against Defendants, Euroflex Americas ("Euroflex Am."), Euroflex SRL, Andrea Milanese and Pier Antonio Milanese (together "Euroflex" or "Defendants"), states as follows:

### INTRODUCTION

1. EURO-PRO is a leading marketer of portable household mechanical cleaners, including full-sized, canister, and hand vacuums; irons and garment steamers; stick vacuums and sweepers; and steam cleaners.

2. EURO-PRO has developed and marketed a line of portable household steam cleaners which includes the EURO-PRO® Shark® Steam Blaster (Model S3300); the EURO-PRO® Shark® Steam Bottle (Model SC618); the EURO-PRO® Steam Mop (Model S3101); the

EURO-PRO® Deluxe Mop (Model S3202); and the EURO-PRO® Ultra Steam Blaster (Model S3325).

3.      Depending on the model and attachments used, these portable household steam cleaners are suitable for indoor or outdoor use, and for deep-cleaning and/or deodorizing surfaces all over the home or office without the use of chemicals. These EURO-PRO® portable household steam cleaners can be used on floors, carpets, appliances, countertops, blinds, etc. Because they use no detergents or chemicals, the EURO-PRO® portable household steam cleaners are safe for upholstery, glass, tile, hardwood, stainless steel, marble, ceramic, vinyl, fiberglass, and mirrors.

4.      EURO-PRO sells its portable household steam cleaners both to retail outlets and directly to consumers, and advertises those products via product packaging, print advertisements, catalog advertisements, infomercials, and on its websites at www.sharkcompany.com, and www.sharksteamer.net.

5.      Euroflex distributes and sells a portable household steam cleaner called the Monster 1200™ Steamer (hereinafter "Monster Steamer"), which it markets directly to the same consumers who are actual or potential purchasers of EURO-PRO's portable household steam cleaners.

6.      Upon information and belief, Euroflex SRL has applied for the trademark MONSTER, United States Application Serial No. 78260191.

7.      Euroflex advertises the Monster Steamer at least through product packaging, through infomercials aired on cable and broadcast television which market the product directly to consumers, and via the internet at websites such as www.monster1200.com.

8. Euroflex's infomercials and website advertising contain false and misleading statements of fact and omission concerning the quality and performance of its Monster Steamer product.

## PARTIES

9. Plaintiff EURO-PRO is a corporation duly organized and existing under the laws of the State of Delaware, with its principal offices located at 1210 Washington Street, 1st Floor, West Newton, MA 02465.

10. Upon information and belief, Defendant Euroflex Americas is a limited liability company duly organized and existing under the laws of the State of Delaware, with a principal place of business at 50 Broad St. Suite 1911, New York, NY 10004.

11. Upon information and belief, Defendant Euroflex SRL is a foreign corporation, with a principal place of business at Via Dei Colli 59 31058 Susegana (TV) Italy. Also upon information and belief, Euroflex SRL controls and directs the operations of the sales of the Monster Steamer in the United States and is advertised as the manufacturer and source of the Monster Steamer product. Additionally, upon information and belief, Euroflex SRL controls and directs the operations of the affiliate or subsidiary Euroflex Americas and is a primary actor in the creation, control and dissemination of the advertising at issue in the paragraphs below.

12. Upon information and belief, Defendant Andrea Milanese is a citizen of Italy and is an officer of Euroflex SRL and Euroflex Americas and controls and directs the advertising, sales and distribution for both Euroflex SRL and Euroflex Americas. Upon information and belief, he is also a primary actor in the matters alleged herein by virtue of his actions promoting the Monster Steamer and directing and controlling the advertising and sales of the Monster Steamer in the United States and this judicial district. Additionally, upon information and belief,

3

Defendant Andrea Milanese has attended trade shows in the United States for the purpose of advertising and promoting Euroflex products throughout the United States, including the Monster Steamer.

13.     Upon information and belief, Defendant Pier Antonio Milanese is a citizen of Italy, an officer of Euroflex SRL, and controls and directs the advertising for Euroflex SRL and for Euroflex Americas including the advertising for the Monster Steamer. Upon information and belief, Defendant Pier Antonio Milanese is a primary actor in the matters alleged herein by virtue of his control over and participation in the advertising and sales of the Monster Steamer in the United States and this judicial district by both Euroflex SRL and Euroflex Americas. Additionally, upon information and belief, Defendant Pier Antonio Milanese is also a primary actor by virtue of his coordination and work with Defendant Andrea Milanese to advertise and sell the Monster Steamer in the United States and in this judicial district.

14.     Upon information and belief, both Euroflex SRL and Euroflex Americas, working as one company, are the developers, manufacturers and marketers of steam cleaner products in the United States and sold to merchandise retailers throughout the United States as well as sold directly to consumers using direct marketing throughout the United States, including residents within the State of New York. These products include the Monster Steamer.

15.     The infomercial for the Monster Steamer advertises and holds out the Monster Steamer to be "from one of the leading appliance manufacturers in Italy." The source of the Monster Steamer is held out to be "Euroflex" which has "been in business for over 30 years" and comes from "Italy's premier innovator in cleaning technology." Throughout the infomercial, the MONSTER trademark is superimposed over an Italian flag.

## JURISDICTION AND VENUE

16. The Court has jurisdiction over each of the claims pursuant to 28 U.S.C. §§ 1331, 1338(a) & (b), and the Lanham Act, 15 U.S.C. §§ 1125, *et seq*. The Court also has supplemental jurisdiction over the claims under New York statutes and common law under 28 U.S.C. § 1367.

17. This Court has jurisdiction over Defendant Euroflex Americas because its principal place of business is in New York, it transacts business in New York and is otherwise subject to jurisdiction in this state. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c).

18. This Court has jurisdiction over Defendant Euroflex SRL because it transacts business in New York and is otherwise subject to jurisdiction in this state, as detailed more fully in the paragraphs above. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), (c) and (d).

19. This Court has jurisdiction over Defendant Andrea Milanese because he regularly transacts business in New York and is otherwise subject to jurisdiction in this state as outlined above. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (d).

20. This Court has jurisdiction over Defendant Pier Antonio Milanese because he is an alien who controls and direct the actions of Euroflex SRL and Euroflex Americas as alleged in paragraph 12, above, and who, therefore under the stream of commerce theory as well as under the laws of the forum state, is subject to jurisdiction in this District. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (d).

## COUNT ONE
### (False Advertising In Violation of Section 43(a) of the Lanham Act)

21. EURO-PRO repeats and realleges paragraphs 1 to 20, as if fully set forth herein.

### Euroflex's "Sanitize" Claims

22.   Euroflex's Monster Steamer infomercial contains false and misleading statements of fact and omission concerning the performance of the Monster Steamer product, to wit: the alleged ability of that product to kill various microorganisms instantly and to disinfect various cleaning surfaces when used as demonstrated on the infomercial.

23.   Specifically, for example, the infomercial for the Monster Steamer product introduces the product as the "Steam Cleaner and Sanitizer," both as words printed on the screen and as the voice-over from the narrator.

24.   The infomercial for the Monster Steamer explicitly conveys the false and misleading message that the consumer can "steam clean and sanitize almost anything in your home from the kitchen to the bathroom and from the ceiling to the floor" and that the Monster Steamer is the "world's first deep cleaning and truly sanitizing appliance that will kill germs right on contact."

25.   The infomercial falsely tells the consumer that the Monster Steamer can "eliminate germs, bacteria and odors on contact."

26.   The infomercial falsely claims that the Monster Steamer "turns steam into safe, germ-killing fog."

27.   The Monster Steamer infomercial falsely claims that "no one [else] has this exclusive patented Clean Blast technology that allows you to sanitize anything on contact – even the air we breathe" as the demonstrator waves the steamer briefly through the air. Simultaneously, the false statement, "SANITIZE ON CONTACT" is displayed on the screen.

28.   During a scene in a kitchen, the Monster Steamer infomercial falsely states that: "Wherever my fog touches I'm sanitizing as well" as the demonstrator waves the steamer around

the "kitchen" countertop. The false statement "SANITIZE ON CONTACT!" is displayed on the screen simultaneously with the demonstrator's claim.

29. The Monster Steamer infomercial falsely states, "All you have to do is hit that area and you know you are killing the germs and bacteria" as the demonstrator quickly moves the steamer from one area to another.

30. While the demonstrator in the infomercial waves the Monster Steamer around a water dispenser built into a side-by-side refrigerator/freezer, the voice-over falsely states: "Purify your water…sanitizing everything."

31. The false statement "DESTROYS MOLD & MILDEW" appears on the screen as the demonstrator waves the Monster Steamer down the refrigerator door seal and falsely claims that it will "prevent the mold for 6 months."

32. The Monster Steamer infomercial falsely claims, in words on the screen and spoken words, that the Monster Steamer will "DEEP CLEAN ANY SURFACE."

33. After moving from a "kitchen" to a "bathroom," the demonstrator on the Monster Steamer infomercial states: ". . . remember, we're eliminating 99.99% of all germs and bacteria on contact." The voice-over later states, "you can truly sanitize your entire bathroom in 15 seconds" while the words "Sanitize Your Entire Bathroom in Just 15 seconds" appear on the screen. All of these are false statements.

34. While the demonstrator briefly waves the Monster Steamer at some toothbrushes, the false statement "CLEANS & SANITIZES" appears on the screen, and the demonstrator makes the false statement to consumers that the toothbrushes are cleaned and sanitized.

35. The Monster Steamer infomercial also conveys false messages to consumers when it claims to sanitize around the toilet as the demonstrator briefly waves the steamer around

7

the toilet from above the toilet area and states, "You want to kill those germs. You want to know that you are sanitizing." The infomercial continues with this claim as it states, "You know that you've got peace of mind because everything is sanitized and is really clean."

36.   The Monster Steamer infomercial again makes the false claim in the bathroom, "Wherever that steam is going, I'm sanitizing."

37.   While in the bathroom, the demonstrator again falsely claims that with the Monster Steamer, "You can sanitize your entire bathroom in seconds!" while the false statement, "SANITIZE IN SECONDS" appears on the screen simultaneously. Additionally, while waving the steamer briefly through the air in the shower, the demonstrator again falsely claims that with the Monster Steamer, "Remember wherever the fog touches you're sanitizing" and also falsely states, "Remember you're sanitizing, you're cleaning" while the words "MOLD & MILDEW" appear on the screen.

38.   After moving from the "bathroom" to the "bedroom," the Monster Steamer infomercial falsely claims that it can "clean and sanitize your entire mattress in under 30 seconds, even your pillows!" while the false statement "CLEAN & SANITIZE UNDER 30 SECONDS" is displayed on the screen, and the demonstrator briefly waves the steam above the mattress.

39.   Also in the "bedroom," the Monster Steamer infomercial falsely shows the printed words "KILLS DUST MITES" on the screen as an animation falsely shows the Monster Steamer spraying the mattress and killing representative bugs, and the demonstrator describes the same action.

8

40. During the Monster Steamer infomercial, both the "host" and a "testimonial" person falsely say that the Monster Steamer "kills *all* the germs and bacteria that it comes in contact with." (emphasis added).

41. The demonstrators move to the "children's room" where the Monster Steamer falsely purports to "clean and sanitize" the baby high chair and the baby pacifier by waving the products through the steam.

42. The Monster Steamer infomercial moves to discussing its transformation into a floor cleaner and claims, "Easily converts to a floor sanitizer" while the false statement "CLEANS & SANITIZES" appears on the screen.

43. The Monster Steamer infomercial falsely claims that the floor cleaner will "clean and sanitize an entire room in just minutes."

44. Furthermore, upon information and belief, websites authorized by Euroflex feature the Monster Steamer product and show web pages that falsely describe the Monster Steamer product. Those web pages include the false claims: "Kills 99.99% of Germs & Bacteria," "Removes Mold & Mildew," and "Deep clean Any Surface from the Kitchen to the Bathroom." The streaming video on the website makes many of the same false and misleading "sanitizing" claims as the infomercial as detailed in the above paragraphs.

45. These and other statements in the Monster Steamer infomercial and on the authorized website pages convey the false messages and are designed to provide the consumer with the belief that the Monster Steamer product will provide consumers with a significant benefit by killing various microorganisms "on contact" and by sanitizing various items and cleaning surfaces in seconds when used as shown in the infomercial. Upon information and belief, these statements are literally false and/or misleading, in that the Monster Steamer product

does not provide such benefits to consumers, particularly when used as demonstrated on the infomercial, as advertised by Euroflex.

### Euroflex's "Superiority" Performance Claims

46. Euroflex's Monster Steamer infomercial and websites advertising the Monster Steamer contain false and misleading statements of fact and omission concerning the Monster Steamer product. Particularly, these false and misleading statements of fact and omission concern the alleged ability of the Monster Steamer product to perform certain tasks and claims superiority of that performance as compared to any other portable household steam cleaners.

47. Specifically, for example, the infomercial for the Monster Steamer product repeatedly states "just add water – in less than a minute you have 30 minutes of steam cleaning power." In fact, the Monster Steamer instructional book says that it takes 3-4 minutes for steam to develop.

48. Furthermore, the Monster Steamer infomercial falsely states there are, "so many other choices in steamers, this is the only one of its kind - the only one that can sanitize."

49. The Monster Steamer infomercial also falsely claims that "regular steam cleaners just boil water and quickly start spitting" while the words "SPIT & SPUTTER" appear on the screen.

50. The Monster Steamer infomercial goes on to say that "that is the difference between the Monster and so many other steamers," and falsely claims that the Monster Steamer will sanitize and kill both mold and mildew.

51. The Monster Steamer infomercial makes additional false claims, including that "The last blast of steam is just as powerful as the first." "It kills 99.99% of all germs and bacteria on contact." "No other steam cleaner in the world can do that."

52. The Monster Steamer also falsely claims to be "the world's first deep cleaner and sanitizer."

53. The Monster Steamer infomercial falsely states that other steamers merely kill a "narrow range of bacteria" and compares the Monster Steamer to a "traditional" steamer that requires holding the steamer "2 inches away for 2 minutes which would require over 1 hour to clean 1 square foot" in order to provide the sanitizing of the Monster Steamer.

54. The Monster Steamer infomercial falsely claims that the Monster Steamer is "the most powerful handheld."

55. Furthermore, upon information and belief, websites authorized by Euroflex feature the Monster Steamer product and show web pages that falsely describe the Monster Steamer product. Those web pages include the description: "the world's first deep cleaner" and make many of the same false claims on the websites' streaming imbedded video as are made in the infomercial, as detailed in the above paragraphs.

56. The statements identified above, particularly when considered in the context of the other claims from Euroflex identified herein, convey the message, and are designed to provide the consumer with a false belief, that the Monster Steamer product is objectively superior to, and provides a performance objectively superior to that of, any other portable household steam cleaner available to consumers. Upon information and belief, these statements are literally false and/or misleading, in that the Monster Steamer product is not objectively superior to all other portable household steam cleaners available to consumers, as advertised by Euroflex.

### Euroflex's EPA "tested and approved" Claims

57. Euroflex's Monster Steamer infomercial also contains false and misleading statements of fact and omission concerning the quality and assurances of the Monster Steamer product, to wit: that the product has been "tested and approved" by the EPA, "so you know it's safe."

58. Specifically, for example, the infomercial for the Monster Steamer product falsely states that the product is "EPA tested and approved," and falsely describes the product as a "health device."

59. The infomercial for the Monster Steamer repeatedly states falsely that the steamer is an "EPA tested oxygen powered sanitizer."

60. The infomercial states that the EPA recommends that carpets are cleaned every two months, then demonstrates the Monster Steamer with the floor attachment and falsely claims that the consumer can "clean and sanitize an entire room in just minutes."

61. The demonstrator in the Monster Steamer infomercial falsely states, "[It] isn't just a cleaning machine. It's a health machine. It's a steam cleaner, a sanitizer, an odor eliminator... even a carpet and upholstery sanitizer."

62. The Monster Steamer infomercial states the product is "safe for kids. Safe for the environment. Safe on hands – you are not burning yourself" as the demonstrator steams products held in his hand.

63. These and other statements in the Monster Steamer infomercial convey the message, and are designed to provide the consumer with the belief, that the Monster Steamer product will provide consumers with a significant benefit because it has been tested and approved by the EPA and has been determined by the EPA as a product that will provide health

benefits and is safe and effective as determined by the EPA. Upon information and belief, these statements are literally false and/or misleading, in that the Monster Steamer product does not provide such a benefit to consumers, no such designation is available from the EPA, and the machine does not perform as a "health machine," either with or without the alleged EPA approval, particularly when used as demonstrated in the infomercial, as advertised by Euroflex.

64. Therefore, as detailed in paragraphs 21 through 63, above, Euroflex's advertising contains materially false and misleading statements of fact and omission regarding the comparative and absolute performance and quality of the Monster Steamer product, that have deceived or have the tendency to deceive a substantial segment of the buying audience, including but not limited to false and misleading statements and omissions regarding: (1) the cleaning and sanitizing abilities of the Monster Steamer product to kill germs and bacteria "on contact" or to provide a meaningful benefit to consumer by disinfecting cleaning surfaces when used as demonstrated on the infomercial; (2) the superiority of the Monster Steamer product to all other portable household steam cleaners; and (3) the fact that the Monster Steamer provides a consumer benefit because it has been tested and approved by the EPA and is a health machine.

65. Such false statements and omissions have the effect of misrepresenting the nature and characteristics of the goods and services being offered by Euroflex.

66. These false statements and omissions by Euroflex constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

67. As a direct and proximate result of the wrongful acts of Euroflex alleged above, EURO-PRO has suffered and will continue to suffer injury to its business, including but not limited to monetary injury due to diversion of sales from itself to Euroflex as well as injury to its goodwill and market share. Pursuant to 15 U.S.C. § 1117, EURO-PRO is entitled to damages for

Euroflex's Lanham Act violations, and an accounting of profits made by Euroflex on sales of its Monster Steamer products, as well as recovery of costs and reasonable attorneys' fees incurred in this action.

68. Euroflex's acts are willful, wanton, and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling EURO-PRO to recover additional damages and its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

69. Upon information and belief, Euroflex will continue to engage in the wrongful acts alleged above unless enjoined by this Court pursuant to 15 U.S.C. § 1116.

## COUNT TWO
### (Unfair Competition & Deceptive Trade Practices Under N.Y. General Business Law § 349)

70. EURO-PRO repeats and realleges Paragraphs 1 to 69, as if fully set forth herein.

71. By reason of the acts and practices set forth above, Defendants have and are engaged in deceptive trade practices or acts in the conduct of a business, trade or commerce, or furnishing of goods and/or services, in violation of section 349 of the New York General Business Law.

72. Such false statements and omissions have the effect of misrepresenting the nature and characteristics of the goods and services being offered by Defendants, which practice is unfair, unethical, and unscrupulous, and causes substantial injury to consumers, to the public, and to Defendants' competitors.

73. Unless enjoined by the Court, Defendants will continue said deceptive trade practices or acts, thereby deceiving the public and causing immediate and irreparable damage to Plaintiff and to the public. Plaintiff has no adequate remedy at law.

## COUNT THREE
### (False Advertising Under N.Y. General Business Law § 350)

74. EURO-PRO repeats and realleges Paragraphs 1 to 73, as if fully set forth herein.

75. By reason of the acts and practices set forth above, Defendants have and are engaged in false advertising and deceptive trade practices or acts in the conduct of a business, trade or commerce, or furnishing of goods and/or services, in violation of section 350 of the New York General Business Law.

76. Such false statements and omissions have the effect of misrepresenting the nature and characteristics of the goods and services being offered by Defendants, which practice is unfair, unethical, and unscrupulous, and causes substantial injury to consumers, to the public, and to Defendants' competitors.

77. Unless enjoined by the Court, Defendants will continue said deceptive trade practices or acts, thereby deceiving the public and causing immediate and irreparable damage to Plaintiff and to the public. Plaintiff has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff EURO-PRO seeks the following relief:

(a) that the Court enter a judgment finding Defendants guilty of false advertising under Section 43(a) of the Lanham Act with respect to its Monster Steamer products;

(b) that the Court enter a judgment finding Defendants guilty of violating the New York General Laws Annotated §§ 349 and 350 which prohibit unfair competition and/or unfair and deceptive trade practices, with respect to its Monster Steamer products;

(c) that the Court grant preliminary and permanent injunctive relief, enjoining and restraining Defendants and their agents, servants, employees, attorneys and all those in active concert and participation with them from making false and misleading statements of fact in any

advertising concerning the Monster Steamer products, including but not limited to false and misleading statements concerning:

        (1) the superiority of the Monster Steamer product to all other household steam cleaners;

        (2) the ability of the Monster Steamer product to kill germs and bacteria "on contact" or to provide a meaningful benefit to consumers by sanitizing surfaces when used as demonstrated in its advertising;

        (3) the endorsement of the Monster Steamer by the EPA or the fact that the EPA has been either "test" or "approved" by the EPA; and

        (d)    that the Court award EURO-PRO its actual damages according to proof, including any profits derived from Defendants' unlawful activities and any damages incurred by EURO-PRO as a result of Defendants' unlawful activities, but in any event no less than $75,000.00 exclusive of interest and costs plus prejudgment interest; and

        (e)    awarding EURO-PRO its costs and attorneys' fees and such other, future and additional relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims as to which jury trial may be had.

Dated: New York, New York
      July 9, 2008

Respectfully submitted,

*/s/ Michael C. Hartmere*
_____
Michael C. Hartmere (MH-6839)
Venable LLP
Rockefeller Center
1270 Avenue of the Americas
The Twenty-Fifth Floor
New York, New York 10020
(212) 307-5500
Fax: (212) 307-5598
mchartmere@venable.com

Roger A. Colaizzi
Mary Ellen R. Himes
VENABLE LLP
575 7th Street, N.W.
Washington, DC 20004
(202) 344-4000
Fax: (202) 344-8300
racolaizzi@venable.com
mehimes@venable.com

Counsel for Plaintiffs
EURO-PRO Operating LLC

DC1/297859